## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| DR. LEAH ANTONIEWICZ, and | § | |
| DR. MICHELE CURTIS, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-14-2083 |
| | § | |
| THE UNIVERSITY OF TEXAS HEALTH AND | § | |
| SCIENCE CENTER AT HOUSTON, | § | |
| DR. SEBASTIAN FARO, and | § | |
| DR. SEAN BLACKWELL | § | |
| *Defendants.* | § | |

### MEMORANDUM OPINION & ORDER

Pending before the court is defendants' amended motion to dismiss, motion for more definite statement, and motion to require a *Schultea* reply. Dkt. 10. Plaintiffs submitted a response to the original motion, and defendants submitted a reply. Dkts. 12, 14. Since defendants filed the motion, the court ordered part of the motion—about whether plaintiffs timely filed their EEOC charges—be turned into a motion for summary judgment. Dkt. 15. Plaintiffs submitted a response to the motion for summary judgment. Dkt. 17. Defendants did not submit a reply by the original deadline outlined by the court, but they did submit a reply to plaintiffs' response. Dkt. 19. The defendants sought leave from the court for consideration of their reply and the court granted the motion. Dkt. 21. At the same time, the court allowed plaintiffs 10 days to file a surreply. *Id.* Plaintiffs did not file a surreply.

### I. BACKGROUND

Plaintiffs Dr. Leah Antoniewicz and Dr. Michele Curtis are former female faculty members of UTHSC-H where they provided obstetrics and gynecological ("OB/GYN") care at Houston-area hospitals. Dkt. 1 at 4. Dr. Sebastian Faro was the Vice Chairman of the OB/GYN Department,

where he supervised both plaintiffs.  *Id.* at 5.  Dr. Sean Blackwell was an associate professor appointed as Interim Chairman, and later the Chairman, of the OB/GYN Department.  *Id.* at 6.  Plaintiffs allege that they were paid less and treated less favorably than male physicians by Drs. Faro and Blackwell and the broader UTHSC-H, including being denied the same opportunities given to males, which further increased the pay disparity.  *Id.* at 2, 6.  In addition to the fewer opportunities and pay disparity, plaintiffs allege more specifically that the defendants gave male physicians more surgical time than females and instead assigned female physicians to outpatient office-based duties, excluded female physicians from meetings, moved females out of their offices in favor of men, and engaged in other behavior that marginalized the role of female physicians.  *Id.* at 10.  Plaintiffs allege that this discriminatory behavior was an ongoing pattern and practice in the OB/GYN Department.  *Id.* at 9.

Plaintiffs assert that Dr. Curtis brought her concerns to management at UTHSC-H, to no avail.  After this, Dr. Curtis retained legal counsel and in January 2012 she entered into a settlement agreement with UTHSC-H regarding then existing complaints of unequal pay based upon discrimination.  *Id.* at 7.  Dr. Antoniewicz claims that she brought her concerns about the lesser opportunities for females and pay disparity between males and females to Dr. Faro in February 2012.  *Id.*  Faro allegedly denied the difference in treatment based on gender and did not remedy the alleged discrimination.  *Id.*  Then, plaintiffs assert that Dr. Antoniewicz and another female physician met with Dr. Blackwell to discuss the discriminatory treatment and pay based on their gender, but Dr. Blackwell did not remedy the alleged discrimination.  *Id.*  After this, in February 2012, plaintiffs filed a complaint of discriminatory treatment with UTHSC-H's Equal Opportunity Office complaining of the treatment and pay disparity based on their gender, and the roles of Drs. Faro and

Blackwell in creating such a discriminatory work environment. *Id.* However, plaintiffs assert, in July 2012, UTHSC-H informed plaintiffs that they found Drs. Faro and Blackwell's actions were not discriminatory. *Id.*

Plaintiffs also assert that the discriminatory treatment continued during the pendency of the investigation and after UTHSC-H informed plaintiffs that it believed the actions were nondiscriminatory. *Id.* at 8. According to plaintiffs, approximately one month later, Drs. Antoniewicz and Curtis were advised by UTHSC-H that their contracts would not be renewed, and that they would be terminated on August 31, 2012. Plaintiffs plead that while other physicians were also scheduled to be terminated at the same time, the contracts of those physicians were extended and, in the case of one of the female physicians, the decision to terminate was rescinded.[1] *Id.* at 8. The physicians whose contracts were extended or who were retained either were male or the physician had not asserted a claim of discriminatory treatment. *Id.*

Since Drs. Curtis and Antoniewicz were terminated, UTHSC-H has allegedly hired a male physician at one of the hospitals at which Antoniewicz had medical appointments, and the male physician performs the same procedures that she taught and performed extensively while at UTHSC-H. *Id.* at 9. The newly-hired physician was allegedly recruited during the time that UTHSC-H was terminating Drs. Antoniewicz and Curtis. *Id.* Because Dr. Antoniewicz had received teaching awards and recognition for her exceptional performance from UTHSC-H, plaintiffs assert that the decision to replace her with a male physician was due to her prior complaints of unequal opportunities, pay inequities and mistreatment base on her gender. *Id.* Within three months of Dr.

---

[1] Plaintiffs point out that even though UTHSC-H decided to rescind the termination of this female physician, UTHSC-H now allegedly precludes her from performing elective gynecologic surgeries, which plaintiffs assert could still adversely affect her compensation. *Id.*

Curtis's discharge, plaintiffs allege that UTHSC-H hired a male professor who was unable or unwilling to perform the duties that were expected of Dr. Curtis as a physician and professor. *Id.* Because Dr. Curtis had received teaching awards and recognition for her exceptional performance from UTHSC-H, plaintiffs allege that the decision to replace her with a male physician was due to her prior complaints of unequal opportunities, pay inequalities, and mistreatment based upon her gender. *Id.*

Plaintiffs then filed their complaints with the EEOC. The EEOC did not pursue the case, and after plaintiffs were given a right to sue letter from the EEOC, plaintiffs brought this suit on their own behalf and on behalf of a similarly situated class of female physicians, against UTHSC-H and Drs. Faro and Blackwell on July 21, 2014. Plaintiffs brought four causes of action: 1) A Title VII and Fair Pay Act discrimination claim against UTHSC-H, including a claim for plaintiffs being paid less than their male counterparts; 2) a Title VII retaliation claim against UTHSC-H for not renewing Drs. Curtis and Antoniewicz's contracts after they reported discriminatory treatment; 3) a Title VII and Fair Pay Act discrimination claim brought on behalf of all female physicians against UTHSC-H based on its discriminatory "patterns and practices;" and 4) a Section 1983 claim against Drs. Faro and Blackwell in their official and individual capacities for First and Fourteenth Amendment violations.

Defendants have moved to dismiss the Title VII claims (claims 1–3) on the basis that plaintiffs did not timely file their charges of discrimination. The court turned this aspect of the motion to dismiss into a motion for summary judgment. Dkt. 15. Additionally, defendants move to dismiss the Section 1983 claims against Drs. Faro and Blackwell in their official capacities. Defendants also move the court to require the Section 1983 claims against Drs. Faro and Blackwell

individually be pled with more specificity.  Finally, defendants move the court to order a *Schultea* reply to Drs. Faro and Blackwell's assertions of qualified immunity.  Plaintiffs have responded to the motion and it is ripe for review.

## II. LEGAL STANDARDS

### A.     *Motion for Summary Judgment*

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986).  An issue is "material" if its resolution could affect the outcome of the action.  *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007).  "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party."  *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact.  *Id.* at 322.  If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required.  *Id* .  "For any matter on which the non-movant

would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting Fed. R. Civ. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

6

**B.      *Motion to Dismiss for Failure to State a Claim***

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.  As part of the *Twombly-Iqbal* analysis, the court proceeds in two steps.  First, the court separates legal conclusions from well-pled facts. *Iqbal*, 556 U.S. at 678–79.  Second, the court reviews the well-pled factual allegations, assumes they are true, and then determines whether they "plausibly give rise to an entitlement of relief." *Id.* at 679.

Generally, when "considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  However, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

Though a defendant can seek dismissal on an affirmative defense, dismissal will only be granted if the defense is "established by the face of the complaint." *Janvey v. Suarez*, 978 F. Supp.

7

2d 685, 702 (N.D. Tex. 2013). For example, A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). Finally, because "a Rule 12(b)(6) motion is viewed with disfavor and rarely granted, a complaint may not be dismissed unless it appears *beyond doubt* that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Leleux v. United States*, 178 F.3d 750, 754 (5th Cir. 1999) (emphasis added) (internal quotations omitted).

### III. Law & Analysis

#### A. *Title VII Claims*

The threshold issue for plaintiffs' Title VII claims of discrimination, retaliation and unfair pay is whether they timely filed their EEOC charges. Because the court concludes that all of plaintiffs' Title VII claims are time-barred for failure to timely file an EEOC charge, it will not consider the substance of the claims.

#### 1. Arguments

The fate of plaintiffs' Title VII claims turn on whether plaintiffs have proved that they timely filed charges of discrimination with the EEOC within 300 days of the conduct plaintiffs challenge. Defendants claim that plaintiffs did not timely file charges. Dkt. 10 at 8. As to the Fair Pay Act ("FPA") claims, defendants allege that plaintiffs failed to file their respective charges of discrimination within 300 days of notice of any pay disparity, and they are barred from recovery under the FPA. Finally, defendants argue, regardless of the Fifth Circuit split on whether a Title VII prerequisite to filing suit is jurisdictional or whether it implicates subject matter jurisdiction, the

8

claim can be dismissed under either Rule 12(b)(1) for lack of jurisdiction or Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Plaintiffs first respond by moving to strike the exhibits defendants attach to the motion to dismiss.  Dkt. 12 at 8.  Plaintiffs also assert that during the time and after Drs. Curtis and Antoniewicz were advised of the non-renewal of their contracts; UTHSC-H continued to recruit male physician faculty members; and UTHSC-H rescinded the decisions to terminate other physician faculty members.  *Id.* at 11.  Plaintiffs assert that discriminatory actions continued after August 31, 2012, plaintiffs' last day of employment, and that the discriminatory actions occurred within 300 days before they filed their EEOC charges.  *Id.*  Therefore, plaintiffs argue, they have shown that their claims are not time-barred.

Plaintiffs separately address the FPA claims, arguing that each paycheck at an allegedly discriminatory rate is a separate, discrete act of discrimination that effectively resets the statute of limitations for filing an EEOC charge.  *Id.*  Plaintiffs also assert that the FPA allows a plaintiff to recover backpay for up to two years preceding the filing of the charge if unlawful employment practices that occurred during the filing period are similar to the unlawful practices that occurred outside the time for filing a charge.  Based on this, plaintiffs assert that the two-year period under which to file an EEOC charge commenced for Dr. Curtis on June 26, 2011 and for Dr. Antoniewicz on June 28, 2011.  *Id.* at 11.

Defendants reply that the recruiting efforts did not subject Drs. Curtis and Antoniewicz to new adverse action, since there is no claim that UTHSC-H refused to hire them in lieu of male faculty.  *Id.*  Further, defendants assert, it is undisputed that neither plaintiff filed her charge of discrimination within 300 days of learning that her faculty appointment was not being renewed on

August 3, 2012.  Dkt. 14 at 2.  Finally, defendants explain, plaintiffs have not alleged any discriminatory pay—such as receiving a paycheck—within 300 days of filing their EEOC charges of discrimination, which is fatal to the claim regardless of the FPA's expanded time frame for calculating damages.  *Id.* at 14.

After the court converted this issue into a motion for summary judgment, defendants did not file anything further, but plaintiffs asserted additional arguments.  Dkt. 17.  As to defendants' contention that plaintiffs knew as early as August 3, 2012, that their contracts would not be renewed, plaintiffs do not dispute this fact, they merely dispute the evidence proffered to support this fact. *Id.* at 8.  Specifically, plaintiffs assert that the letters defendants use as evidence to support their position contain hearsay, and do not establish when, if ever, the letters were sent to plaintiffs, nor do they establish whether the alleged conversations identified in the letters actually occurred.  *Id.* at 10.  Plaintiffs go on to argue that because the person who signed the business record affidavit did not have personal knowledge that the conversations occurred, the business record exception to hearsay does not apply and the letters cannot be admitted as evidence.  *Id.*

2.    *Substantive Law*

"Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court."  *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002). "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue."  *Id.*  This case turns on the first type of exhaustion regarding whether plaintiffs timely filed their charges with the EEOC.  *Id.*  "Although filing of an EEOC charge is not a jurisdictional prerequisite, it is a precondition to filing suit in district court."  *Id.* (internal quotation omitted); *Crawford v. W. Elec. Co., Inc.*, 614 F.2d 1300, 1306 (5th Cir. 1980).  As such, plaintiffs

must offer proof that they timely filed their EEOC charges in order to pursue their claims. *Crawford*, 614 F.2d at 1306; *see also Thornton v. S. Cent. Bell Tel. Co.*, 906 F. Supp. 1110, 1116 (S.D. Miss. 1995) (asserting that, after looking at the other exhaustion requirement of timely filing suit, "[W]hen a defendant contends that a plaintiff has failed to file suit timely under Title VII, the burden rests with the plaintiff to prove this condition precedent by showing either that the suit, in fact, was filed timely or that the deadline should be subject to the equitable doctrines of estoppel, tolling, or waiver.").

Defendants must assert an absence of evidence to support plaintiffs' claim before the ultimate burden to prove that the EEOC charges were timely filed shifts to plaintiffs. *Transamerica*, 66 F.3d at 718–19. Defendants's motion to dismiss states that, "[p]laintiffs can present no evidence that they suffered any discriminatory or retaliatory treatment within the requisite limitations period under Title VII or the FPA." Dkt. 10 at 9. Because defendants have met their burden, the court focuses on whether plaintiffs have "demonstrat[ed] by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. Plaintiffs have not asserted that equitable doctrines apply in this case.

>   *3.      Analysis*

It is undisputed that an aggrieved party must file an EEOC charge within 300 days after the alleged unlawful practice occurred, and that the proper focus is upon the time of the discriminatory acts, not when they become most painful. Dkts. 10 at 7; 12 at 10. It is also undisputed that the court looks at when the plaintiffs knew or reasonably should have known that the challenged act occurred. Dkts. 10 at 8; 12 at 11. Therefore, the court must first determine what the challenged act is for each

claim to assess when the plaintiffs knew the act occurred.  Plaintiffs assert three types of Title VII claims: discrimination, retaliation, and unequal pay for which the court must identify the challenged act.  Then the court must determine whether each plaintiff knew or reasonably should have known that the challenged act occurred within the proper time frame.  Dr. Curtis filed her EEOC charge on June 28, 2011.  Dkt. 12 at 11.  Therefore, Dr. Curtis's 300-day period in which an alleged unlawful practice must have occurred spans from September 1, 2012 to June 28, 2013.  Dr. Antoniewicz filed her EEOC charge on June 26, 2013.  Dkt. 12 at 11.  Therefore, Dr. Antoniewicz's 300-day period in which an alleged unlawful practice must have occurred spans from August 30, 2012 to June 26, 2013.

In discrimination claims, Fifth Circuit precedent recognizes challenges only to "ultimate employment decisions," such as hiring, granting leave, discharging, promoting, and compensating, when assessing a claim for Title VII employment discrimination claims.  *McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007); *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004).  The latest "ultimate employment decision" plaintiffs assert that defendants made toward plaintiffs was the decision not to renew plaintiffs' contracts.  Therefore, the limitation period for these claims begins to run when plaintiffs knew or reasonable should have known that the decision occurred, not when it became most painful, such as on the last day of the contract.

In retaliation claims, the relevant acts are not limited to ultimate employment actions, and their scope "extends [to acts] beyond workplace-related or employment-related retaliatory acts and harm."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61–67 (2006).  However, not all retaliation is actionable, and courts must use the facts and context to differentiate amongst alleged retaliatory behaviors "'to separate significant from trivial harms.'"  *Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009) (quoting *Burlington*, 548 U.S. at 68.).  "To constitute

12

prohibited retaliation, an employment action must be 'materially adverse,' one that would 'dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Stewart*, 568 F.3d at 331.   In this case, plaintiffs claim the latest retaliatory act was based in the work place: The "retaliation ultimately culminated in Defendants' decision not to renew the contracts of Dr. Antoniewicz and Dr. Curtis." Dkt. 1 at 11.   Further, it is clear that a decision not to renew a contract, which ends the employment, and allegedly because of the complaints of discrimination filed in prior months, is a materially adverse employment action.   Therefore, the limitation period for the retaliation claim began when plaintiffs knew or reasonably should have known about the decision not to renew their contracts.

Under the Fair Pay Act, each paycheck that is at an allegedly discriminatory rate is a separate, discrete act of discrimination that resets the statute of limitations for filing an EEOC charge. *Niwayama v. Texas Tech Univ.*, 590 F. App'x 351, 356 (5th Cir. 2014).   However, plaintiffs must still assert that they received an allegedly discriminatory pay check, or some form of compensation, within the 300 days before the formal charges of discrimination were filed with the EEOC. *Blasingame v. Eli Lilly & Co.*, No. H-11-4522, 2013 WL 5707324, at *7 (S.D. Tex. Oct. 18, 2013) (Lake, J.).

The court begins with the FPA claims.   Plaintiffs did not plead facts or otherwise assert, much less submit proof, that they received paychecks or some other form of compensation in the relevant time frames.   Therefore, neither plaintiff has met her burden to show that she timely filed her charges with the EEOC and the FPA claims are time-barred.

As to Dr. Curtis's Title VII discrimination and retaliation claims, it is her burden to provide competent summary judgment proof that she filed her EEOC charge within 300 days of when she knew about the decision not to renew her contract: September 1, 2012 to June 28, 2013.   However,

her briefing concedes that she had notice of the decision not to renew her contract before August 31, 2012.[2]  Dkt. 1 at 8.  Therefore, Dr. Curtis did not timely file her EEOC charges and her Title VII discrimination and retaliation claims are time-barred.

As to Dr. Antoniewicz's Title VII discrimination and retaliation claims, it is her burden to provide competent summary judgment proof that she filed her EEOC charge within 300 days of when she knew about the decision not to renew her contract: August 30, 2012 to June 26, 2013. However, she also has already conceded in her briefing that she had notice of the decision not to renew her contract before August 31, 2012.  Dkt. 1 at 8, *see also* n.1.  Effectively, she must prove that she received notice of the decision on August 30, 2012, in order to have timely filed her EEOC charge.  However, Dr. Antoniewicz's complaint, response, and response to the motion for summary judgment are all void of facts or assertions, much less evidence, as to when she received notice of UTHSC-H's decision not to renew her contract.  Dkts. 1, 12, 17.  Dr. Antoniewicz cannot avoid summary judgment simply by presenting "conclusory allegations" that she timely filed her EEOC charge.  Nor does the court consider Dr. Antoniewicz's objections to the evidence defendants put forth because defendants do not have the burden on this issue.  Dr. Antoniewicz did not provide evidence that she filed her EEOC charge within 300 days of learning that her contract would not be renewed.  Accordingly, her Title VII discrimination and retaliation claims are time-barred.

---

[2] *See, e.g.*, Dkts. 1 at 8 ("Approximately one month [after UTHSC-H informed the plaintiffs in July 2012 that the behavior they complained of was not discriminatory,] Dr. Antoniewicz and Dr. Curtis *were advised by UTHSC-H* that their contracts *would* not be renewed, and that they *would be* terminated on August 31, 2012." (emphasis added)); 12 at 6 (same); 17 at 8 (same); 12 at 11 ("Defendants' arguments ignore Plaintiffs' contentions that UTHSC-H - *after advising Plaintiffs of the non-renewal of their contracts - continued to recruit* male physician faculty members and rescinded the decisions to terminate other physician faculty members.  The actions *continued* after August 31, 2012, Plaintiffs' last day of employment." (emphasis added)).  The language throughout the briefing is clear that the plaintiffs were advised before the date of their termination that their contracts would not be renewed.

In the alternative, even if the burden to prove that plaintiffs met their preconditions to filing suit rests with defendants, the conclusion does not change.[3]  To the extent it is defendants' burden to prove that plaintiffs did not meet their preconditions to filing suit, they have offered two pieces of evidence: 1) letters from Dr. Blackwell to each plaintiff on August 3, 2012 informing them that their contracts would not be renewed (Dkt. 14-1 at 2–3), including a business record affidavit for the letters (Dkt. 14-1 at 2); and 2) a declaration from Dr. Blackwell stating that he met with both plaintiffs on August 3, 2012; he handed them the letters referenced in Dkt. 14-1; and he told each plaintiff that their contracts would not be renewed.  Dkt. 19-1 at 2.  In response to the letters, plaintiffs do not dispute defendants' position that plaintiffs were notified of the decision on August 3, 2012 (and plaintiffs never dispute this alleged fact), but rather, plaintiffs object to the admissibility of the letters as hearsay.  Plaintiffs did not respond to defendants' declaration from Dr. Blackwell.

As plaintiffs have not objected to the admissibility of defendants' declaration from Dr. Blackwell, this evidence alone supports that plaintiffs were on notice by August 3, 2012 that a decision to not renew their contracts had been made.  As to the physical letters, defendants submitted a business record affidavit that meets the requirements of Federal Rule of Evidence 803(6).  As to the contents of the business record-letters, as well as any later-made complaint that Dr. Blackwell's declaration is hearsay, the court finds that the statements are not being used for the truth of the matter asserted, and therefore are not hearsay.  Hearsay is an out of court statement used for the truth of the matter asserted in the statement.  Fed. R. Evid. 801(c).  Defendants are not using the statements from Dr. Blackwell made to plaintiffs for the truth of whether plaintiffs' contracts were or were not going

---

[3] Though the court determined that it is plaintiffs' burden to prove that preconditions to bringing a lawsuit have been met (*see* pp. 10–11), the briefing indicates—without meaningful argument from either party on the issue—that the parties disagree about who bears the burden of proof on the issue.  The court includes this alternative analysis to demonstrate that the outcome does not change regardless of which party bears the burden of proof.

to be renewed.  In fact, the question of whether the contracts were not renewed is a non-issue; it is undisputed that the contracts were not renewed.  Instead, defendants use the statements to show that plaintiff's had *notice* that such a decision regarding plaintiffs' contracts might have occurred, true or not.  *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 660 (5th Cir. 2002) (district court properly admitted verbal complaints made to an employer regarding defendant's behavior because they were not being used to show that the behavior was true or not, but were instead used to show that the employer was on notice that the behavior might have occurred).  Therefore, to the extent that defendants bear the burden of proof regarding exhaustion of remedies, they have put on factually uncontroverted evidence that plaintiffs had notice of the conduct they challenge on August 3, 2012.  Plaintiffs have not raised a question of material fact on this issue sufficient to move past the summary judgment phase.  Based on this evidence plaintiffs "knew or reasonably should have known" about the conduct they challenge in their Title VII claims on August 3, 2012, and did not timely file their EEOC charges.  Accordingly, regardless of whose burden it is, defendants prevail as to the Title VII employment discrimination claims.

For all these reasons, defendants' motion for summary judgment as to the Title VII claims is GRANTED.

## B.     *Section 1983 claims against Dr. Faro and Dr. Blackwell*

Now the court considers defendants' motion to dismiss plaintiffs' Section 1983 claims against Dr. Blackwell and Dr. Faro.

### 1.     *Arguments*

Plaintiffs bring suit against Drs. Faro and Blackwell in their individual and official capacities for allegedly violating plaintiffs' rights under the First and Fourteenth Amendments in violation of Section 1983.  Dkt. 1 at 13.  Plaintiffs assert that after they complained about the discrimination, Drs.

16

Faro and Blackwell retaliated against plaintiffs by terminating their employment in order to intentionally chill their speech, discredit them, and punish them for exercising their right to free speech. *Id.* at 14. All of these actions, plaintiffs assert, were taken by Drs. Faro and Blackwell as policymakers and final decisionmakers at UTHSC-H and were taken under color of the laws and regulations of the State of Texas. *Id.* at 13.

Defendants move to dismiss the 1983 claims on a few different bases. First, they assert that Drs. Faro and Blackwell in their official capacity are not "persons" within the statutory definition of those who may be held liable for violating a person's rights under Section 1983. Dkt 10 at 2. Second, defendants assert that Drs. Faro and Blackwell are entitled to qualified immunity in their individual capacities as to all of plaintiffs' Section 1983 claims.

2.   *Substantive Law*

State actors are subject to civil liability when, "under color of any statute, ordinance, regulation, custom, or usage, of any State," that official subjects, or causes to be subjected, a person "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983. For a plaintiff to state a claim under § 1983 he "must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting under color of state law." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005). Public officials sued in their personal capacity for money damages under § 1983 may be able to assert a common-law defense of absolute or qualified immunity from suit. *Imbler v. Pachtman*, 424 U.S. 409, 418–19, 96 S. Ct. 984 (1976). Public officials sued in their official capacity are protected by the Eleventh Amendment, which bars suits by private citizens against a state in federal court,  unless the Eleventh Amendment is shown not to apply or the *Ex Parte Young* exception applies. *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010). "In determining

17

whether the *Ex Parte Young* doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Com'n of Maryland*, 535 U.S. 635, 645, 122 S Ct. 1753 (2002).  An example of such prospective relief is an injunction.  *Id.* at 646.

When an official asserts qualified immunity, the first step is to identify the allegedly infringed constitutional right.  *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865 (1989).

> If the allegations do not establish a violation of a constitutional right, the [official] is entitled to qualified immunity. . . . If the allegations could make out a constitutional violation, we must ask whether the right was clearly established—that is, whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted. . . . If an [official] makes a reasonable mistake as to what the law requires, [he] is entitled to immunity.

*Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001) (citations and quotation marks omitted).

As to whether the allegations establish a violation of a constitutional right, "[a] state may not discharge an employee for exercising his [or her] right to freedom of speech."  *Brawner v. City of Richardson, Tex.*, 855 F.2d 187, 191 (5th Cir. 1988).  However, "[i]f the speech did not address a matter of public concern, then the employee is not entitled to constitutional protection against discharge, even if he was fired for what he said."  *Id.*  Therefore, "[a]n employee contending that his termination from employment violated the First Amendment must initially establish that his speech addressed a matter of public concern."  *Id.*  This is because courts do not want to interfere with personnel decisions "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest."  *Id.* (internal quotation omitted).  "To determine whether speech addresses a matter of public concern, the court must examine the entire record for the content, form, and context of the statement."  *Id.*  Finally, courts can also

consider "whether the state's interest in efficient management of its operations outweighs the employee's interest in commenting upon matters of public concern." *Id.* at 192.

A constitutional right is "clearly established" when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Atteberry*, 430 F.3d at 256 (internal quotation marks omitted). The conduct need not be prohibited by a specific judicial mandate; rather, the unlawfulness need only be "readily apparent from relevant precedent in sufficiently similar situations." *Id.* at 257.

3.    *Analysis*

The court first looks at the claims against Drs. Faro and Blackwell in their official capacities. Claims against state employees in their official capacities are effectively claims against the state, and Section 1983 claims do not override the Eleventh Amendment. *Will v. Mich. Dep't. of State Police*, 490 U.S. 58, 65–66, 109 S. Ct. 2304 (1989). Plaintiffs have not shown that the Eleventh Amendment does not apply to these claims, nor shown that the claims could be subject to an *Ex Parte Young* exception. The complaint does not seek prospective injunctive relief, and the only forward-looking request is "front pay" or damages, which are not allowed against the state under the Eleventh Amendment. Accordingly, plaintiffs claims against Drs. Faro and Blackwell in their official capacities are DISMISSED.

The court next considers whether Drs. Faro and Blackwell can claim qualified immunity in their individual capacities. Plaintiffs claim that their First Amendment rights were violated because their contracts were not renewed—they were effectively terminated after years of employment—in retaliation for reporting the misconduct of their supervisors and seeking an investigation. Dkt. 1 at 13. They claim that the matters they spoke out about were matters of serious political, social and

public concern, including pay and training opportunity disparities, and other behavior that favored male physicians and marginalized female physicians.  *Id.*

The First Amendment right of an employee to speak out on a matter of public concern has been clearly established for decades.  *Brawner*, 855 F.2d at 192–93.  As is a public employee's speech revealing improper conduct of fellow employees.  *Id.* At 193.  Discrimination and discriminatory behavior against women is also clearly a serious public concern, as laws have been passed by Congress to address discrimination in the work place and pay disparity between males and females.  *See, e.g.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*; Equal Pay Act, 29 U.S.C. § 206(d)(1).  Plaintiffs' assertions that they reported and asked for an investigation of their two supervisors' alleged misconduct in the form of discriminating behavior against them and other women in the department, including alleged pay disparity, does not just regard a personal concern, it is a public concern.  At least since the 1980s, the Fifth Circuit has held that "a reasonably objective public official would have known that termination of an employee for his speech concerning misconduct by public officials would violate a clearly established constitutional right." *Brawner*, 855 F.2d at 191.  Therefore, at this stage in the pleadings, and to the extent Drs. Faro and Blackwell hold positions that could invoke qualified immunity, they are not entitled to qualified immunity.

## C.  Motion for a More Definite Statement and Motion to Require Plaintiffs to File a Schultea Reply

Defendants also ask the court to require plaintiffs to provide a more definite statement regarding their Section 1983 complaints against the individual defendants, and to file a *Schultea* reply addressing defendants' assertion of qualified immunity because they do not believe plaintiffs have pled specific facts that overcome defendants' qualified immunity.

20

"A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).  Such a motion "must point out the defects complained of and the details desired." *Id.*  Here, Drs. Blackwell and Faro request that plaintiffs provide more details about the Section 1983 complaints against them in their individual capacities.  However, the complaint alleges many facts regarding the basis of plaintiffs' 1983 claim, and sufficient facts on which to base a plausible claim, such that a more definite statement is not needed.  Therefore, the motion for a more definite statement is DENIED.

A *Schultea* reply stems from the rule that "when a plaintiff sues a public official under [Section] 1983, the district court must insist on heightened pleading by the plaintiff."  *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996).  "The court must first demand that a plaintiff must file a short and plain statement of his complaint, a complaint that rests on more than conclusions alone." *Id.*  "Next, the court may, in its own discretion, insist that the plaintiff file a reply tailored to an answer pleading the defense of qualified immunity." *Id.*  "The court's discretion not to order such a reply is very narrow, however, when greater detail might assist." *Id.*  The court finds that the plaintiffs have pled sufficient facts to address Drs. Faro and Blackwell's assertion of qualified immunity.  Plaintiffs not only allege specific discriminatory behaviors by each doctor, but detail the process plaintiffs followed to report the alleged behavior, and the timeline in which that occurred in relation to the decision not to extend the two complainants' contracts.  Further, they plead facts sufficient to assess the elements of a claim of qualified immunity claim, including what right was violated and how.  Therefore, sufficient detail has been pled such that a *Schultea* reply is not necessary, and the motion to order one is DENIED.

21

### III. CONCLUSION

For the foregoing reasons, the court makes the following rulings on Dkt. 10: defendants' motion to dismiss that the court converted to a motion for summary judgment on plaintiffs' Title VII claims is GRANTED; defendants' motion to dismiss plaintiffs' Section 1983 claims is DENIED; defendants' assertion of qualified immunity for Drs. Faro and Blackwell is DENIED; defendants' motion for a more definite statement of plaintiffs' Section 1983 claims is DENIED; and defendants' motion for a *Schultea* reply is DENIED.

It is so ORDERED.

Signed at Houston, Texas on June 17, 2015.

Gray H. Miller
United States District Judge